PEOPLE v HERSHEY

Docket No. 309183. Submitted November 5, 2013, at Lansing. Decided
    December 5, 2013, at 9:05 a.m. Leave to appeal sought.
        Joseph F. Hershey pleaded guilty in the Muskegon Circuit Court of
    violating the terms of the probation imposed for his failure to pay
    child support, MCL 750.165, and was sentenced as a fourth-offense
    habitual offender to 3½ to 15 years' imprisonment. Defendant
    moved for resentencing and to correct the Sentencing Information
    Report on the grounds that Offense Variable (OV) 16, MCL 777.46,
    had been incorrectly scored at 5 points given that the child-support
    arrearage did not constitute property that was obtained, damaged,
    lost, or destroyed, and that OV 19, MCL 777.49, had been
    incorrectly scored at 10 points because his failure to pay child
    support did not constitute interference with the administration of
    justice, resulting in a sentence that was outside the appropriate
    guidelines range. The court, James M. Graves, Jr., J., denied the
    motion, and the Court of Appeals denied defendant's delayed
    application for leave to appeal. Unpublished order of the Court of
    Appeals, entered September 14, 2012 (Docket No. 309183). The
    Supreme Court, in lieu of granting defendant's application for
    leave to appeal, remanded the case to the Court of Appeals for
    consideration as on leave granted of whether the offense variables
    were properly scored and whether defendant had forfeited or
    waived any scoring errors. 493 Mich 937 (2013).

        The Court of Appeals held:

        1. The trial court erred by assessing 5 points for OV 16. MCL
    777.46 requires the court to assess points if property was obtained,
    damaged, lost or destroyed under the circumstances set forth in
    that provision. Defendant's failure to pay his child-support arrear-
    age did not constitute obtaining property unlawfully under MCL
    777.46(2)(b) because defendant had no income or significant
    assets, and a legal obligation to pay money does not translate to
    possession of the money owed. Further, the child-support arrear-
    age was not lost to the original owner under MCL 777.46(2)(b)
    because, in order for a person to lose something or suffer loss, the
    person must either possess that thing or have an expectation or
    right in it. Defendant did not possess the money, and the definition

of "loss" or "lost" does not encompass the children's loss of the right to the money or the expectation of it. Accordingly, a preponderance of the evidence did not support the trial court's scoring decision with respect to OV 16.

2. The trial court erred by assessing 10 points for OV 19. The phrase "interfere with the administration of justice" for purposes of OV 19 means to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process. Neither defendant's failure to pay child support nor his violation of the terms of his probation constituted interference with the administration of justice under this definition.

3. Defendant did not waive his right to contest the scoring of OV 16 and OV 19 by failing to object at sentencing. Although defendant and his counsel stated that they had no additions or corrections to the presentence report, that statement came in response to a question from the court that was broad, not specific to the scoring of the offense variables; and the record did not show a clear expression of satisfaction with the trial court's scoring decisions with respect to OV 16 and OV 19. Because defendant raised the scoring errors in a motion for resentencing before the trial court, he did not forfeit the issue.

Sentence vacated; case remanded for resentencing under properly scored sentencing guidelines.

1. Sentences — Offense Variable 16 — Property Obtained, Damaged, Lost, or Destroyed — Failure to Pay Child Support — Unlawful Obtaining of Property.

A defendant's failure to pay child support does not constitute the unlawful obtaining of property for purposes of scoring Offense Variable 16 if the preponderance of the evidence indicates that the defendant had no income or significant assets (MCL 777.46).

2. Sentences — Offense Variable 16 — Property Obtained, Damaged, Lost, or Destroyed — Failure to Pay Child Support — Loss of Property.

A defendant's failure to pay child support does not constitute a loss of property to the original owner for purposes of scoring Offense Variable 16 because the term "loss" or "lost" as used in MCL 777.46 does not encompass a person's loss of a right or expectation.

3. Sentences — Offense Variable 19 — Interference with the Administration of Justice — Failure to Pay Child Support.

A failure to pay child support does not constitute interference with the administration of justice for purposes of Offense Variable 19 (MCL 777.49).

4. SENTENCES — OFFENSE VARIABLE 19 — INTERFERENCE WITH THE ADMINISTRATION OF JUSTICE — PROBATION VIOLATIONS.

The phrase "interfere with the administration of justice" for purposes of Offense Variable 19 means to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process; violating the terms of one's probation does not constitute interference with the administration of justice for purposes of Offense Variable 19 (MCL 777.49).

5. APPEALS — SENTENCES — SCORING OF SENTENCING GUIDELINES — WAIVER.

A general statement at sentencing that a defendant has no additions or corrections to a presentence investigation report does not waive the defendant's right to appellate review of scoring errors that result in a sentence outside the appropriate guidelines sentence range (MCL 769.34(10)).

*Dale J. Hilson*, Muskegon County Prosecutor; *Terrence E. Dean*, Assistant Prosecutor; and *Charles F. Justian*, Senior Assistant Prosecutor, for the people.

*Ronald D. Ambrose* for defendant.

Before: FITZGERALD, P.J., and MARKEY and BECKERING, JJ.

PER CURIAM. In this criminal case involving the failure to pay child support, MCL 750.165, we consider the appeal of defendant, Joseph Frank Hershey, as on leave granted pursuant to a remand order from our Supreme Court. Defendant seeks resentencing, claiming that the trial court incorrectly scored Offense Variables (OVs) 16 and 19. In its order, the Supreme Court directed this Court to consider "whether [OV] 16 (property obtained, damaged, lost, or destroyed) and OV 19 (interference with the administration of justice) were correctly scored and whether the defendant, by failing to object to the scoring of these offense variables at sentencing, forfeited or waived any scoring errors."[1] For the reasons set forth below, we conclude that OVs 16

[1] *People v Hershey*, 493 Mich 937 (2013).

and 19 were incorrectly scored, resulting in a sentence that is outside the appropriate guidelines sentence range. Furthermore, having reviewed the entire record, we conclude that defendant did not waive these scoring errors; and because he raised the errors in a motion for resentencing before the trial court, he did not forfeit the issue, and the matter is preserved. We vacate defendant's sentence and remand for resentencing under properly scored sentencing guidelines.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On July 8, 2010, defendant pleaded guilty of failing to pay child support from approximately September 26, 2006, until approximately December 2009. Pursuant to a *Cobbs*[2] commitment, if defendant was able to pay $1,604.67 by the time of sentencing, the trial court would impose a period of probation, not incarceration, for defendant's offense. The trial court agreed to delay sentencing for three months in order to give defendant the opportunity to pay the money. At the subsequent sentencing hearing on October 25, 2010, defendant admitted that he had not paid the $1,604.67; therefore, the trial court sentenced him to 5 months in jail and 24 months' probation. As part of his probation, defendant was ordered to pay restitution, which included his child support arrearages. The Presentence Investigation Report (PSIR) indicates that on April 7, 2010, the amount of defendant's arrearage was $6,418.68. On July 28, 2011, after defendant was released from jail, a bench warrant was filed because defendant had violated the terms of his probation by failing to report to his supervising agent and by contacting his daughter. On August 29, 2011, defendant pleaded guilty of the probation violation.

---

[2] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993).

On September 13, 2011, the trial court held a sentencing hearing. At the beginning of the hearing, the trial court asked defense counsel whether he had had an opportunity to read the two presentence reports,[3] to which defense counsel responded that he had, and that he had no additions or corrections. The trial court confirmed with defendant that he had also had an opportunity to read the two presentence reports and discuss them with his attorney, and that he had no additions or corrections. In the Sentencing Information Report (SIR), which was attached to the PSIR, the probation department recommended assessing 5 points for OV 16, MCL 777.46, and 10 points for OV 19, MCL 777.49. At no point during the sentencing, however, did anyone discuss the proposed scoring of the OV factors or the trial court's intentions with regard to scoring. The trial court then sentenced defendant as an habitual offender, fourth offense, to 3 years and 6 months to 15 years' imprisonment for failing to pay court-ordered child support. The SIR reveals that the trial court scored 5 points for OV 16 and 10 points for OV 19, which was consistent with the probation department's recommendation.

On January 25, 2012, defendant moved the trial court to correct the SIR and for resentencing. Defendant argued that OV 16 was improperly scored because it did not apply to the facts of his case. According to defendant, the failure to pay child support did not constitute property "obtained, damaged, lost, or destroyed." He also argued that OV 19 was improperly scored because, although the phrase "interfered with or

---

[3] At this hearing, the trial court also sentenced defendant for an unrelated resisting-and-obstructing offense to which he had previously pleaded guilty. Defendant has not appealed his sentence relating to that offense.

attempted to interfere with the administration of justice" in MCL 777.49(c) is broad, there was no evidence in the record that he did so. Defendant insisted that the mere act of failing to pay child support was not enough; otherwise, every offense would constitute interference with the administration of justice in MCL 777.49(c). Because a change in the scoring of OVs 16 and 19 would affect the minimum sentence guidelines range, defendant sought resentencing.[4] The prosecution opposed defendant's motion, contending that defendant had expressly waived his challenges to OVs 16 and 19 and that, regardless, they were correctly scored. The trial court denied defendant's motion for resentencing, adopting the prosecution's reasoning. Although this Court denied defendant's delayed application for leave to appeal,[5] the Supreme Court has ordered this Court to address both the waiver issue and the scoring of OVs 16 and 19.

## II. SCORING OF OFFENSE VARIABLES

Recently in *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court clarified both the quantum of evidence necessary to support a scoring decision and the standard of review to be used by this Court:

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and

---

[4] With the trial court's scoring of OV 16 at 5 points and OV 19 at 10 points, defendant's minimum sentence guideline range was 5 months to 46 months. If zero points were assessed for OVs 16 and 19, defendant's minimum sentence guidelines range would be 2 months to 34 months. It should be noted that if OV 19 was correctly scored, any change in the scoring of OV 16 would not affect the guidelines range. However, the Supreme Court has ordered us to address the scoring of both OVs at issue.

[5] *People v Hershey*, unpublished order of the Court of Appeals, entered September 14, 2012 (Docket No. 309183).

must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

Defendant's arguments require this Court to interpret OV 16, MCL 777.46; and OV 19, MCL 777.49. Statutory interpretation is a question of law that we review de novo on appeal. *People v Gibbs*, 299 Mich App 473, 484; 830 NW2d 821 (2013). "This Court interprets sentencing guidelines in accordance with the rules of statutory construction." *People v Light*, 290 Mich App 717, 722; 803 NW2d 720 (2010). When this Court interprets a statute, its primary goal

> is to give effect to the intent of the Legislature. If the language of the statute is unambiguous, judicial construction is not permitted because the Legislature is presumed to have intended the meaning it plainly expressed. Judicial construction is appropriate, however, if reasonable minds can differ concerning the meaning of a statute. Where ambiguity exists, this Court seeks to effectuate the Legislature's intent by applying a reasonable construction based on the purpose of the statute and the object sought to be accomplished. The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. In construing a statute, the statutory provisions must be read in the context of the entire statute in order to produce a harmonious whole; courts must avoid a construction that would render statutory language nugatory. [*Id.* (citation and quotation marks omitted).]

If a term in a statute is defined by statute, the definition contained therein controls. *People v Williams*, 288 Mich App 67, 74; 792 NW2d 384 (2010). However, if a term is not defined by statute, a reviewing court may look to dictionary definitions for guidance. *People v Laidler*, 491 Mich 339, 347; 817 NW2d 517 (2012).

## A. OV 16

Defendant argues that the trial court erred by scoring OV 16 at 5 points. We agree.

MCL 777.46(1)(c) requires the trial court to score 5 points when property that "had a value of $1,000.00 or more but not more than $20,000.00" is "obtained, damaged, lost, or destroyed." "In cases in which the property was obtained unlawfully, lost to the lawful owner, or destroyed," the trial court is to use the value of the property in scoring OV 16. MCL 777.46(2)(b).

Defendant argues that OV 16 does not apply to the facts of this case because there was no property "obtained, damaged, lost, or destroyed." Specifically, defendant points out that, as set forth in the PSIR, he had no ability to pay his court-ordered assessments because he was unemployed.[6] The prosecution argues that defendant "obtained" money by retaining it, instead of providing it for his children as ordered by the family court. The prosecution also argues that the money is "lost" to the children because it was not available to them to pay their support at the critical time that the payment was due.

Neither defendant nor the prosecution cites any caselaw in support of their arguments, nor do they provide any further analysis, for that matter. In fact, there is no published caselaw addressing whether failing to pay child support can be scored under OV 16.[7]

---

[6] The PSIR noted defendant's admitted substance abuse problem as well as his mental health issues, inability to refrain from being involved in criminal activity, and the fact that he may be "currently living in the local parks."

[7] Two unpublished decisions have declined to address the issue. First, in *People v Matthews*, unpublished opinion per curiam of the Court of Appeals, issued November 19, 2009 (Docket No. 286178), the trial court scored 10 points under OV 16 for loss of property when the sentencing

Because neither party argues that property was "damaged" or "destroyed" by defendant's failure to pay child support, the only issues are whether property was "obtained unlawfully" or "lost to the lawful owner."[8] MCL 777.46(2)(b).

With respect to whether defendant unlawfully obtained property, the PSIR reveals that defendant was unemployed, possibly living in a park, and unable to pay child support. It also reveals that defendant did not receive any income or have any significant assets. The record is void of any evidence, let alone a preponderance of the evidence, to refute that defendant was unemployed and unable to pay. If defendant did not have money, he cannot be said to have retained or obtained money; a legal obligation to pay money does not translate to possession of the money owed. Scoring 5 points on the basis that defendant unlawfully obtained between $1,000 and $20,000 was erroneous because a preponderance of evidence in the record did not support that conclusion.[9] See MCL 777.46; *Hardy*, 494 Mich at 438.

With respect to whether property was lost to the lawful owner, the terms "lost" and "loss" are not

offense was failure to pay child support. This Court did not decide whether this score was appropriate in *Matthews* but, rather, simply noted the trial court's scoring decision under OV 16. *Matthews*, unpub op at 7. Subsequently, in *People v Brown*, unpublished opinion per curiam of the Court of Appeals, issued July 28, 2011 (Docket No. 297770), this Court declined to address the issue because even assuming error in the scoring of OV 16, the defendant's sentence was within the appropriate guidelines range; therefore, the defendant was not entitled to resentencing.

[8] Defendant does not dispute that the amount he failed to pay in child support was between $1,000 and $20,000.

[9] We need not address, and thus save for another day, the issue of whether a defendant who actually possesses the money or means needed to pay child support and who simply elects not to do so can be considered to have "unlawfully obtained" property under MCL 777.46.

defined by MCL 777.46, so we may consult a dictionary in order to obtain the plain and ordinary meaning of the terms. See *Laidler*, 491 Mich at 347. In pertinent part, the verb "to lose"—and, by extension, the terms "loss" and "lost"—is defined as: "1. to come to be without, as through accident . . . . 2. to fail inadvertently to retain . . . . 3. to suffer the deprivation of: *to lose one's job*. . . . 22. to suffer loss: *to lose on a contract.*" *Random House Webster's College Dictionary* (2005) (emphasis in original). Each of these definitions implies that in order for someone to lose something or suffer loss, the person must either possess the thing that is lost or have an expectation or right in the thing that is lost, e.g., losing on a contract. In this case, neither party argues that defendant took something that his children already possessed when he failed to pay child support. Indeed, if they never had money through support payments, defendant could not have taken child support payments from them.

Nonetheless, the prosecutor contends that defendant's children suffered loss because they were deprived of support money to which they were entitled. It is undisputed that children have a right to receive financial support from their parents, *Borowsky v Borowsky*, 273 Mich App 666, 672-673; 733 NW2d 71 (2007), and that the circuit court ordered defendant to pay child support. Thus, defendant's children were entitled to receive financial support from defendant. As noted, there are different dictionary definitions for the terms "loss" and "lost." It is well known that a term can be defined in a number of different ways; therefore, when interpreting a statute, this Court is to "determine the most pertinent definition of a word in light of its context." See *Feyz v Mercy Mem Hosp*, 475 Mich 663, 684 n 62; 719 NW2d 1 (2006). Further, this Court must

determine the definition that most appropriately furthers legislative intent. *Id.*

MCL 777.46 directs the trial court to assess points for "[t]he property" that was lost, damaged, or destroyed. When interpreting a statute, this Court is to interpret terms in their context. *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012). The term "property" is defined, in pertinent part, as "that which a person owns; the possession or possessions of a particular owner." *Random House Webster's College Dictionary* (2005). The Legislature's selection of the term "the property" is more consistent with the conclusion that the Legislature intended for OV 16 to be scored when tangible property that was already possessed by a particular owner was unlawfully obtained, damaged, lost, or destroyed. See *Feyz*, 475 Mich at 684 n 62 (when interpreting a statute and defining terms contained therein, a reviewing court is, considering the context of the terms employed, to adopt definitions for terms that are consistent with the Legislature's intent). Therefore, we conclude that the definition of the term "loss" or "lost" does not encompass a person's loss of a right or expectation.

This interpretation is consistent with the manner in which this Court has already applied OV 16. Indeed, scoring 5 points for OV 16 under the circumstances of this case would stand in contrast with other cases in which OV 16 has been scored. Specifically, OV 16 typically applies when the defendant either takes or destroys property that belongs to the victim. See, e.g., *People v Leversee*, 243 Mich App 337, 349-350; 622 NW2d 325 (2000) (upholding the trial court's scoring of OV 16 where the defendant stole guns from the victims but later returned them); *People v Key*, unpublished opinion per curiam of the Court of Appeals, issued

January 22, 2013 (Docket No. 307801) (upholding the scoring of OV 16 where the defendant stole property from a store); *People v McKenzie*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 2012 (Docket No. 308114) (upholding the trial court's scoring of OV 16 where the defendant stole money from the victim); *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued June 30, 2011 (Docket Nos. 296211 and 300294) (upholding the trial court's scoring of OV 16 where the defendant fraudulently obtained $20,000); *People v Timbs*, unpublished opinion per curiam of the Court of Appeals, issued July 8, 2010 (Docket No. 290546) (upholding the trial court's scoring of OV 16 where the defendant stole jewelry from the victim); *People v Redmond*, unpublished opinion per curiam of the Court of Appeals, issued November 14, 2006 (Docket No. 261458) (affirming the trial court's scoring decision where the victim's employer lost more than $20,000 because of defendant's misconduct).

Because this Court has interpreted and applied OV 16 in a way that requires the loss of something already possessed, because OV 16 requires scoring for "the property" lost, which implies something that was possessed or owned, and because the definition of "lost" or "loss" can require a possessory interest in order for a loss to occur, we interpret OV 16 to require the loss of something that was already possessed in order for the scoring conditions of OV 16 to be satisfied. In this case, defendant did not take anything that his children possessed; rather, he simply failed to fulfill their legal expectation of receiving child support because he was unable to make the payments. Accordingly, the preponderance of the evidence did not support the trial court's scoring decision. The trial court erred by scoring 5 points for OV 16. See *Hardy*, 494 Mich at 438.

B. OV 19

Defendant also argues that the trial court erred by assessing 10 points for OV 19. The prosecution contends that the trial court properly scored OV 19 because defendant interfered with the administration of justice by failing to comply with a court order that required him to pay child support and by violating the terms of his probation. Defendant contends that neither action amounts to interference with the administration of justice under OV 19. We agree with defendant.

OV 19 applies if there was a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. The trial court must assess 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c).

There is no published decision addressing whether a probation violation or a failure to pay child support can constitute interference with the administration of justice under OV 19. To decide this issue, interpretation of MCL 777.49 is required to determine the plain and ordinary meaning of the phrase "interfere[] with the administration of justice," which MCL 777.49 does not define. Therefore, to determine the plain and ordinary meaning of the phrase, "we may consider dictionary definitions to discern the Legislature's intent." *People v Kowalski*, 489 Mich 488, 500 n 13; 803 NW2d 200 (2011); see also *Laidler*, 491 Mich at 347. As previously discussed, although a dictionary may define a term in a number of different ways, this Court is to "determine the most pertinent definition of a word in light of its context" when interpreting a statute. See *Feyz*, 475 Mich at 684 n 62. The plain and ordinary meaning of "interfere" is "to come into opposition or collision so as

to hamper, hinder, or obstruct someone or something[.]" *Random House Webster's College Dictionary* (2005). The plain and ordinary meaning of "administration" is "the act or process of administering." *Id.* And "justice" is defined as "judgment of individuals or causes by judicial process: *to administer justice.*" *Id.* Therefore, the plain and ordinary meaning of "interfere with the administration of justice" for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process.[10] See *id.*; *Laidler*, 491 Mich at 347.

This plain and ordinary meaning of the phrase "interfere with the administration of justice" is consistent with the published caselaw addressing OV 19. Opposing so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process has broad application, just as "interfered with or attempted to interfere with the administration of justice" is "a broad phrase." *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). It "encompasses more than just the actual judicial process" and can include "[c]onduct that occurs before criminal charges are filed," acts that constitute obstruction of justice, and acts that do not "necessarily rise to the level of a chargeable offense . . . ." *Id.* at 286-288. Decisions of both this Court and our Supreme

---

[10] Our Supreme Court has stated that " '[t]he administration of justice' process, including the 'actual judicial process,' is not commenced until an underlying crime has occurred, which invokes the process." *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010). Although the *Smith* Court spoke of the commencement of the administration-of-justice process in the context of the criminal justice system, the Court neither identified when the administration-of-justice process begins in a civil context nor limited the administration-of-justice process for purposes of OV 19 to the criminal justice system. In the instant case, we need not and do not decide whether the administration-of-justice process for purposes of OV 19 is limited to the criminal justice system.

Court have held the following conduct to constitute an interference or attempted interference with the administration of justice: providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding. See *id.* at 288; *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013), vacated in part on other grounds 495 Mich 876; *People v McDonald*, 293 Mich App 292, 299; 811 NW2d 507 (2011); *People v Smith*, 488 Mich 193, 196-197; 793 NW2d 666 (2010); *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010); *People v Steele*, 283 Mich App 472, 492; 769 NW2d 256 (2009); *People v Underwood*, 278 Mich App 334, 339; 750 NW2d 612 (2008); *People v Passage*, 277 Mich App 175, 179-181; 743 NW2d 746 (2007); *People v Endres*, 269 Mich App 414, 420-421; 711 NW2d 398 (2006). Each of these acts hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process. For instance, the acts of witness intimidation and deceiving police investigators seek to prevent incriminating evidence from being used throughout the process of administering judgment of individuals by judicial process, including during the pretrial and, potentially, trial stages.

Applying this plain and ordinary meaning of "interfere with the administration of justice" to the facts of the instant case, we conclude that defendant did not interfere with the administration of justice by failing to pay child support. The record illustrates that defendant and the mother of his two children divorced in 2006 and that defendant was obligated by order of the Muskegon

Circuit Court in Case No. 2006-033357-DM to pay a certain amount of monthly child support. From September 26, 2006, through December 16, 2009, defendant paid less than the minimum amount of child support required by court order. However, defendant's failure to comply with this court-ordered obligation did not hinder the process or act of administering judgment by judicial process of the cause in Case No. 2006-033357-DM, i.e., the divorce and child-support matters; defendant's failure to pay child support occurred after the circuit court ordered defendant responsible for child support in that case. Thus, although defendant failed to comply with the circuit court's child-support order, he did not hamper, hinder, or obstruct the act or process of the circuit court's administering judgment in Case No. 2006-033357-DM.

We also conclude that defendant did not interfere with the administration of justice by violating the terms of his probation. On July 8, 2010, defendant pleaded guilty in Case No. 10-059331-FH of failure to pay child support. In October 2010, the trial court entered a judgment of sentence in the case, sentencing defendant to 5 months in jail and 24 months' probation. After defendant was released from jail, he violated his probation by failing to report to his supervising agent and by contacting his daughter. However, defendant's probation violation did not hinder the process or act of administering judgment by judicial process of defendant in Case No. 10-059331-FH. When defendant violated the terms of his probation, the trial court had already entered the October 2010 judgment of sentence, and the court's probation order was already effective. Thus, although defendant violated the trial court's probation order, he did not hinder the process or act of the trial court administering judgment in Case No. 10-059331-FH. This Court regularly encounters cases

in which individuals have violated the terms of their probation and been resentenced, and we find it notable that there is no caselaw indicating that an offender's probation violation itself (as compared to the underlying conduct) constitutes interference with the administration of justice under OV 19.[11]

Accordingly, because the preponderance of the evidence did not support a finding that defendant "interfered with the administration of justice," we conclude that the trial court erred by scoring OV 19 at 10 points. See MCL 777.49; *Hardy*, 494 Mich at 438.

### III. WAIVER OR FORFEITURE

Because we conclude that both OV 16 and OV 19 were improperly scored, which affected the minimum sentencing guidelines range, and in keeping with the Supreme Court's remand order, we must determine "whether the defendant, by failing to object to the scoring of these offense variables at sentencing, forfeited or waived any scoring errors." *Hershey*, 493 Mich at 937. For the following reasons, we conclude that defendant did not waive the scoring errors. Further, because he raised them in a motion for resentencing before the trial court, he did not forfeit the issue, and the matter is preserved.

MCL 769.34(10) provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate

---

[11] In fact, an offender's probation violation itself is deemed to constitute an objective and verifiable fact worthy of independent consideration when a trial court is considering an upward departure, *People v Schaafsma*, 267 Mich App 184, 186; 704 NW2d 115 (2005), which implies that it is not adequately or otherwise accounted for in the sentencing guidelines.

information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

In *People v Kimble*, 470 Mich 305, 310-312; 684 NW2d 669 (2004), the defendant appealed his sentence, arguing that OV 16 had been improperly scored. In the trial court, the defendant had argued that OV 16 should be scored at 1 point instead of 5 points; on appeal, he argued—for a different reason—that OV 16 should not have been scored at all. *Id.* at 308. The Supreme Court agreed with the defendant's argument on appeal that the trial court clearly erred in scoring OV 16 because OV 16 would only have been applicable had the defendant's conviction been for a crime related to home invasion, which the defendant's conviction was not. *Id.* at 309, 312. The Court noted, however, that "[a]n objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *Id.* at 309. The Supreme Court held that although the defendant did not raise the precise issue at sentencing, in a motion for resentencing, or in a motion to remand, because his sentence was deemed to be outside the appropriate guidelines range, his sentence was appealable under MCL 769.34(10):

> [P]ursuant to [MCL 769.34(10)], a sentence that is outside the appropriate guidelines sentence range, for whatever reason, is appealable regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand. However, if the sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence

and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand.

\*  \*  \*

The second sentence of [MCL 769.34(10)] provides that, even though a sentence that is within the appropriate guidelines sentence range can be appealed if there was a scoring error or inaccurate information was relied upon, it can only be appealed if the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand. In other words, the second sentence simply describes *how* a party must preserve a challenge to a sentence that is within the appropriate guidelines sentence range; *it says nothing about a challenge to a sentence that is outside the appropriate guidelines sentence range.*

Because defendant's sentence is outside the appropriate guidelines sentence range, his sentence is appealable under [MCL 769.34(10)], even though his attorney failed to raise the precise issue at sentencing, in a motion for resentencing, or in a motion to remand. [*Id.* at 310-312 (emphasis added).]

The Court held that because the defendant failed to raise his argument about the inapplicability of OV 16 until he filed an application for leave to appeal in the Court of Appeals, he had to satisfy the plain-error standard set forth in *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). *Kimble*, 470 Mich at 312.

In this case, defendant did not raise at sentencing an issue regarding the scoring of OVs 16 and 19, but he did file a motion for resentencing in the trial court. Defendant is correct in alleging that the trial court erred in scoring OVs 16 and 19. As noted earlier, with the trial court's scoring of OV 16 at 5 points and OV 19 at 10 points, defendant's minimum sentence guideline range was 5 months to 46 months. If no points were assessed for OVs 16 and 19, defendant's minimum sentence guidelines range would be 2 months to 34 months. His

minimum sentence of 3 years and 6 months is outside the appropriate guidelines range. Thus, pursuant to MCL 769.34(10) and *Kimble,* 470 Mich at 310-312, defendant is entitled to appeal the matter unless he is deemed to have waived the error at sentencing. As noted, defendant and his counsel both indicated to the trial court that they had no additions or corrections to the presentence report.

In *People v Carter,* 462 Mich 206, 214; 612 NW2d 144 (2000), our Supreme Court noted the soundness of the principle that, in order to discourage counsel from harboring error as an appellate parachute, issues for appeal must be preserved in the record by notation of one's objection. The *Carter* Court distinguished the principles of waiver and forfeiture as follows:

> Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error. [*Id.* at 215 (quotations and citations omitted).]

When counsel affirmatively approves a jury instruction, for example, he or she waives any error. *Id.* at 215-216. The failure to object, on the other hand, qualifies as forfeiture and is reviewable for plain error. *Id.* at 216.

More recently, our Supreme Court in *Kowalski,* 489 Mich at 503, held that "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." In *Kowalski,* the trial court asked defense counsel multiple times whether he had any objections to the

proposed jury instruction regarding accosting a minor, to which defense counsel responded each time that he did not. *Id.* at 503-504. The Supreme Court deemed defense counsel's responses a waiver, leaving no error to review. *Id.* at 504. The Court based its decision on "the entire record," which revealed that defense counsel "(1) discussed the instructions with the court, (2) affirmatively approved the instructions because he thought they were identical to his own proposed instructions, and (3) then reaffirmed his approval three more times." *Id.* at 504 n 26. The Court held that such conduct "clearly demonstrates waiver—an intentional relinquishment of a known right—because counsel's affirmative statements were repeated, express, and unequivocal and concerned instructions that counsel had more than ample time to fully review and consider." *Id.* Given defense counsel's express and unequivocal indications that he approved of the instructions, the Court rejected defendant's attempts to distinguish between "counsel stating, 'I approve of the instructions,' and counsel stating, 'I have no objections[.]' " *Id.* at 504-505. This analysis in *Kowalski* illustrates that there are no "magic words" that constitute a waiver and that a waiver analysis should consider the entire context of a defendant's conduct concerning a purportedly waived issue to determine whether the defendant, in fact, intentionally relinquished a known right. See *id.* at 503-505 & n 26.

At the outset, we emphasize that the instant case is factually distinguishable from *Kowalski* in terms of both the specific conduct subject to a waiver analysis and the context. This case does not involve jury instructions, a context in which this Court has held that a response by counsel of "no objections" after instructions are given constitutes a waiver. *Id.* at 505 n 28. This distinction is significant. As *Kowalski* aptly illus-

trates, jury instructions are typically discussed in detail by the parties and the trial court several times before the jury is ultimately instructed, including before trial; thus, a response on the record by a defendant of "no objection" to a court's inquiry regarding the propriety of the instructions it has read to a jury is, when viewed in its context, indicative of a manifestation of approval of the instructions given. For this reason, this Court "has consistently held that an affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal." *Id.*, citing *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009); *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004); *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002). Sentencing variables, however, do not always undergo the same degree of scrutiny by the parties and the trial court as do jury instructions. Indeed, the sentencing variables were not even mentioned during sentencing in the instant case. At sentencing, the trial court asked defendant and his counsel if they had any "additions or corrections" to the presentence report. Both defendant and his counsel responded that they did not. Although either defendant or his counsel should have objected had they realized there was a scoring error at that time, at no point during the hearing was there any actual discussion about the scoring of the variables. Unlike in *Kowalski*, it is not clear from the entire record that defendant "clearly express[ed] satisfaction with a trial court's decision[.]" *Kowalski*, 489 Mich at 503.

We conclude that in light of *Kowalski*, *Kimble*, and MCL 769.34(10), defendant did not waive his right to contest the scoring of OVs 16 and 19. Several reasons support this conclusion. First, the record as a whole does not show a clear expression of satisfaction with the

trial court's decision to score OV 16 at 5 points and OV 19 at 10 points. See *Kowalski*, 489 Mich at 503 ("When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver."). When defendant and his counsel responded that they did not have any additions or corrections to the presentence report, the court had not made any decision regarding the scoring of OV 16 and OV 19; indeed, it cannot be said from the record that the court was even considering the scoring of the sentencing variables at the time. Compare with, e.g., *id.* at 504 & n 26 (challenge to jury instructions waived where counsel stated that he had no objection to instructions that he had discussed with the trial court and that the trial court had provided to the jury); *McDonald*, 293 Mich App at 295 (challenge to admission of evidence waived where counsel stated that he had no objection to its admission); *People v Tate*, 244 Mich App 553, 557-559; 624 NW2d 524 (2001) (challenge to the trial court's decision to excuse a juror from deliberations waived where defense counsel both expressly approved the court's jury instruction regarding the function of an alternate juror and responded "No" when the court asked whether counsel had anything further to add for the record after the court questioned and excused the juror); *People v Fetterley*, 229 Mich App 511, 518-520; 583 NW2d 199 (1998) (challenge to trial court's denial of a jury's request for a transcript waived where defense counsel stated that he had no objection to the trial court's proposal of denying the jury's request). The trial court's question to defendant and his counsel was broad, not specific. In contrast, the trial court in *Kowalski* specifically and repeatedly asked defense counsel whether he had a problem with the proposed jury instruction at issue; the record, as a whole, manifested defense counsel's "clear[] expres-

s[ion of] satisfaction with [the] trial court's decision" to read a particular jury instruction. *Kowalski*, 489 Mich at 503. In this case, the record, at most, represents a failure to recognize a scoring error and lodge an objection.

Second, MCL 769.34(10) provides a defendant with three separate opportunities to raise a scoring error: at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. The statute's provision of multiple opportunities to raise the issue implicitly assumes that the defendant might miss a scoring error at the first opportunity: sentencing. Furthermore, if the scoring error results in a sentence that is outside the appropriate guidelines range, a defendant has a fourth opportunity to raise the issue, given that it may be appealed "regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand," albeit under a plain-error analysis. *Kimble*, 470 Mich at 310, 312. Unlike the situation presented by a jury instruction, in which an error could require the drastic remedy of requiring a new trial, the failure to timely recognize a sentencing error would merely require resentencing, which is not a drastic remedy. Defendant presumably moved for resentencing as soon as he realized that there was a scoring error, and there is no basis to think that he was harboring an appellate parachute at sentencing, given that there would be no advantage in doing so. In context, and on the record as a whole, the remarks at sentencing did not rise to the level of a waiver.

Third, the defendant's conduct in *Kimble* is not much different than defendant's conduct in this case: both defendants completely missed the actual scoring error at sentencing. In *Kimble*, the defendant took the additional step of advocating for assessing 1 point for OV 16—a

position that directly contradicted his later argument that zero points should be assessed. If the act of taking a position that is directly contradictory to one's later position does not cause a waiver, neither should the failure to raise a contradictory position.

Finally, the Supreme Court's order in *People v Greene*, 477 Mich 1129 (2007), supports a conclusion that defendant did not waive his right to appeal the incorrect scoring of OVs 16 and 19. Citing *Kimble*, the Supreme Court vacated the defendant's sentence and remanded for resentencing "under properly scored sentencing guidelines," *id.* at 1129-1130, despite the fact that defense counsel had explicitly stipulated to the scoring of OV 1 and stated his "on-the-record expression of satisfaction" with the scores, *People v Greene*, unpublished opinion per curiam of the Court of Appeals, issued November 21, 2006 (Docket No. 263126), p 2, rev'd 477 Mich 1129 (2007). In the instant case, defense counsel's conduct was even less reflective of a potential waiver: he did not stipulate to the scoring of OVs 16 and 19 or express his on-the-record satisfaction with the scoring; he merely indicated that he did not have any additions or corrections when asked about the presentence report in general.

Having considered the whole record, we conclude that defendant did not waive his right to appellate review of the scoring errors in this case. And because he raised his challenge to the improper scoring of OVs 16 and 19 in a motion for resentencing before the trial court, his argument is preserved, and he is entitled to resentencing. See MCL 769.34(10); *Kimble*, 470 Mich at 312.

Because defendant did not waive or forfeit the scoring errors at issue, we need not address his claim of ineffective assistance of counsel.

We vacate defendant's sentence and remand for resentencing under properly scored guidelines. We do not retain jurisdiction.

FITZGERALD, P.J., and MARKEY and BECKERING, JJ., concurred.