# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY ALLEN TAIT,

Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 332252
Huron Circuit Court
LC No. 15-305966-FH

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to commit murder (AWIM), MCL 750.83, and possessing a weapon as a prisoner, MCL 801.262(2). He was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 17 to 30 years for AWIM and 3 to 10 years for possessing a weapon as a prisoner. We affirm.

Defendant was in the Huron County jail when he attacked Corporal Steven Bischer, who was responsible for maintaining security at the jail. Defendant attacked Bischer with an ink pen that he had fashioned into a makeshift stabbing implement known as a "shank," using plastic wrap as a handle. Defendant stabbed Bischer at least two to three times in the back and neck areas. After defendant was disarmed and restrained, Bischer immediately felt pain in his shoulder area. He sought medical treatment at the emergency room of a local hospital. Upon examination, it was determined that Bischer suffered superficial abrasions and a half-centimeter stab wound to his neck area, and he was given a tetanus shot.

Defendant first challenges his AWIM conviction on the ground that the evidence was insufficient to establish that he intended to kill Bischer. We review this issue de novo, *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010), considering the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt," *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). We resolve all conflicts in the evidence in favor of the prosecution, and we will "not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To establish that defendant committed AWIM, the prosecution was required to prove that defendant committed "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541

-1-

(2011) (quotation marks and citation omitted). "The intent to kill may be proved by inference from any facts in evidence." *Id*.

Defendant argues there was insufficient evidence that he intended to kill Bischer. Testimony at trial included that defendant had told multiple corrections officers that he intended to kill Bischer, including Bischer himself. And, after stabbing Bischer in the neck with a shank, he expressed regret for not having succeeded and stated his intent to try again. The jury could infer defendant's intent to kill from these statements. Therefore, there was sufficient evidence to establish the intent element. See *id*.

Next, defendant argues that the court erred by excluding evidence relating to his mental health pursuant to *People v Carpenter*, 464 Mich 223, 241; 627 NW2d 276 (2001), which held that evidence of a defendant's lack of mental capacity short of legal insanity was inadmissible to establish a lack of specific intent. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). An abuse of discretion occurs when the trial court "selects an outcome that does not fall within the range of reasonable and principled outcomes." *Id*. Whether the admission of evidence is precluded by rule or statute is a question of law that is reviewed de novo. *Id*.

Defendant does not challenge the trial court's determination that he did not meet the requirements for establishing an insanity defense. Rather, he argues that the trial court erred by rejecting his argument that evidence of the mood disorder that made him impulsive and aggressive was relevant for purposes other than negating his specific intent and, therefore, was admissible under *Yost*. In *Yost*, this Court held that "[a]lthough a defendant may no longer present evidence of diminished capacity to negate the intent element of a crime, there are circumstances where a defendant's mental capacity may make a fact that is of consequence to the determination of the action more or less probable without such evidence being offered to negate the specific-intent element of the charged offense" and would, therefore, be admissible under MRE 402. *Id*. at 355-356.

It is not clear, however, for what purpose defendant believes the evidence of his mental-health issues is relevant, if not to show that his statements of intent to kill Bischer should not have been taken as evidence of his specific intent to do so. Defendant claims that the evidence was relevant "to explain factual circumstances that would otherwise be used by the prosecution as alleged evidence of [defendant's] calculated and rational pronouncement that he intended to kill Bischer," and that "the jury [was] entitled to consider his mental state when assessing the proper weight to be given to the alleged threats." While defendant insists that this "is not a semantical argument that presents a distinction without a difference," given that the proffered alternative purpose appears to be undermining the significance of defendant's express threats to kill Bischer, which were evidence of his specific intent, we agree with the trial court that the evidence was properly excluded under *Carpenter*.

Finally, defendant challenges the scoring of three offense variables on appeal. The proper interpretation and application of the sentencing guidelines are legal questions that are reviewed de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). The sentencing court's factual determinations must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

First, defendant challenges the scoring of OV 2, which requires five points to be assessed if defendant "possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon," MCL 777.32(1)(d), and requires one point to be assessed if defendant "possessed or used any other potentially lethal weapon," MCL 777.32(1)(e). Five points were assessed for OV 2 and there was no objection to the score raised at sentencing; thus, we review the issue for plain error affecting defendant's substantial rights. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). Defendant contends that he should have received one point under OV 2. The statute does not define "cutting or stabbing weapon." While it is unclear whether an ink pen alone would qualify if used as a stabbing weapon, in this case, evidence indicated that defendant had deliberately fashioned a handle onto the pen to transform it into a shank, that he used it to attack Bischer, and that Bischer was subsequently diagnosed with a "[s]tab wound." Given that the instrument at issue was in fact used to inflict a stab wound, the trial court did not plainly err by classifying it as a stabbing weapon for purposes of scoring OV 2. See *id*.

Next, defendant challenges the scoring of OV 3, which requires 10 points to be assessed if "[b]odily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d), and five points if "[b]odily injury not requiring medical treatment occurred to a victim," MCL 777.33(1)(e). The phrase "requiring medical treatment" "refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). At sentencing, defendant's attorney challenged the assessment of 10 points because Bischer was directed to seek medical treatment by a superior at the jail. Bischer testified that after the attack, he immediately felt pain in his shoulder. The practical nurse who was on site examined him and suggested that he seek additional medical treatment. Bischer sought treatment at the emergency room of a local hospital, where the doctor diagnosed superficial abrasions and a half-centimeter stab wound to his neck. Bischer was also given a tetanus shot. Accordingly, OV 3 was properly scored at ten points. However, even if OV 3 should have been scored at five points, reducing defendant's total OV score by five points does not alter his recommended minimum sentence range, MCL 777.62; thus, resentencing would not be required. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Defendant also raises a challenge to the scoring of OV 19, which requires 25 points to be assessed if defendant, by his conduct, "threatened the security of a penal institution or court." MCL 777.49(a). The trial court should assess 15 points if the defendant "used force or the threat of force against another person . . . to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). At sentencing, defendant's attorney argued that 15 points would be more appropriate "under the circumstances." In this case, the jury found that defendant attacked the person who was responsible for maintaining security at the jail with a weapon. This alone was sufficient to support the score. Further, the record reflects that disarming and restraining defendant required the resources of two additional officers. Under these circumstances, the evidence supported the score of 25 points.

Defendant also argues that assessing 25 points for OV 19 on the basis of the underlying offense penalizes him twice for the same conduct. However, this Court has held that points may be assessed for OV 19 "when the sentencing offense itself necessarily involves interfering with the administration of justice," such as cases involving perjury. *People v Sours*, 315 Mich App 346, 349 n 1; 890 NW2d 401 (2016), citing *People v Underwood*, 278 Mich App 334, 340; 750

NW2d 612 (2008). Because possessing a weapon as an inmate and using that weapon against a corrections officer necessarily threatens the security of a penal institution, the score was properly assessed.

Affirmed.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood